IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
----------------------------------------------------  X
BBS OF AMERICA, INC.,                                 :
                                                      :
                        Plaintiff,                    :
                                                      :   Civil Action No. 15-CV-9205
           - against -                                :
                                                      :
ABC CORP.  d/b/a BIG BANG WHEELS  and                 :
CLYDE KIM,                                            :
                                                      :
                        Defendants.                   :
----------------------------------------------------  X
```

**COMPLAINT**

Plaintiff, BBS of America, Inc. ("BBS"), by and through its attorneys, Lackenbach Siegel, LLP, for its complaint against Defendants, ABC Corp. ("ABC") and Clyde Kim ("Kim") (all collectively "Defendants")(the "Complaint"), hereby alleges as follows:

**NATURE OF ACTION**

1.  In this action, BBS seeks injunctive relief, lost profits, damages and attorneys' fees for Defendants' acts of willful trade mark infringement, counterfeiting, false designation of origin, false descriptions, and unfair competition, pursuant to the Lanham Act, 15 U.S.C. §§1051 *et seq*., and trade mark infringement and dilution, deceptive acts and practices, injury to business reputation and dilution, and unfair competition under the common law and statutes of the State of New York.

**JURISDICTION AND VENUE**

2.  This Court has jurisdiction over the subject matter of this action pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331, 1338, and 1367.

3. The actions of Defendants complained of in this Complaint have been and continue to be committed, at least in part, within the Southern District of New York.

4. Upon information and belief, Defendants contract to supply goods and/or services and/or transact business in New York and/or within this judicial district; and the tortious acts of Defendants complained of in this Complaint, including, without limitation, the willful and illegitimate use of BBS's trademarks and goodwill, have caused harm to BBS within this judicial district. Accordingly, personal jurisdiction exists over Defendants pursuant to CPLR §§ 301 and 302.

5. Upon information and belief, Defendants advertise, offer for sale, and sell goods into this state and this judicial district via retailers, online transactions and tradeshows.

6. Upon information and belief, Defendants' customers include residents of New York State and Defendants have shipped goods into New York State, including goods which form the basis of this Complaint.

7. Venue is proper in this district pursuant to 28 U.S.C. § 1391.

**THE PARTIES**

8. BBS is a corporation organized and existing under the laws of the State of Delaware, having its principal place of business at 5320 BBS Drive, Braselton, Georgia 30517.

9. Upon information and belief, ABC is the business entity operating and doing business as Big Bang Wheels ("Big Bang"), having its principal place of business at 3717 Pipestone Rd., Dallas Texas 75212.

10. Upon information and belief, Kim has a home address located in the state of Texas and is the, or one of the, operating/directing individual(s) of ABC.

11.     Upon information and belief, Kim is the director, member, officer and/or principal of ABC and has aided, abetted, controlled, and/or actively directed and caused Big Bang to commit the acts complained of herein as the alter ego of Big Bang.

## FACTUAL ALLEGATIONS

12.     BBS offers for sale and sells, *inter alia*, wheels for automobiles and center caps for wheels ("BBS's Goods").

13.     BBS is widely considered one of the leaders in its field.  BBS (and/or its affiliated companies) is the original equipment manufacturer for the wheels used by many of the most prestigious automobile manufacturers, including Bentley, Porsche, Mercedes Benz, BMW, and Audi.  BBS and its products have become an industry recognized standard of quality and reliability.

14.     BBS's Goods are sold by leading national automotive goods retailers.

15.     BBS's Goods are sold from retail locations throughout the United States.  BBS's Goods are also sold throughout the United States via on-line sales.

### BBS's Trade Marks

16.     In connection with BBS's business and products, BBS has adopted and used, and BBS is the owner of numerous trademarks, including without limitation, BBS and BBS (Stylized) (the "Trademarks").

17.     BBS is the owner of the following US Trademark Registrations with respect to its trademarks (the "Registered Trademarks"), including without limitation:

      a.      U.S. Trademark Registration No. 1,209,630 for the mark BBS, registered for Motor Vehicle Wheel Rims, Motor Vehicle Wheels and Motor Vehicle Wheel Accessories-Namely, Center Caps; and

      b.      U.S. Trademark Registration No. 1,195,651 for the mark BBS (stylized), registered for Wheel Rims, Motor Vehicle Wheels and Motor Vehicle Wheel Accessories-Namely, Center Caps.

18.     The registrations for the Registered Trademarks are valid and subsisting.

19.     The Trademarks and the Registered Trademarks shall collectively be referred to as "BBS's Marks."

20.     BBS's Marks are inherently distinctive and strong trademarks.

21.     BBS's Marks are currently in use and have never been abandoned.

22.     Because of BBS's extensive use and promotions of BBS's Marks, and in light of the media coverage and/or notoriety pertaining to BBS's Goods and BBS's Marks, BBS's Marks have become distinctive and prominent, and indicate a single source of origin of BBS's Goods, and have acquired secondary meaning.

**Defendants and Defendants' Illegal Activities**

23.     Upon information and belief, Kim is, and has always been, an officer, member, and/or director of Big Bang, and directs and controls all of the activities of Big Bang.

24.     Defendants sell automobile wheels and wheel center caps ("Defendants' Goods").

25.     Defendants promote, market, advertise, offer for sale and sell wheels and center caps and thus, are direct competitors of BBS.

26. In connection Defendants' Goods, Defendants adopted and use the trademark "BBS" ("Defendants' Infringing Mark" or the "Infringing Mark").

27. Defendants use the Infringing Mark on Defendants' Goods themselves, on the packaging for Defendants' Goods, on Defendants' website, on various social media sites, and on and in connection with other advertisements and promotions for Defendants' Goods.

28. Defendants have offered for sale, promoted, advertised, distributed, sold, and shipped (and continue all such activities) Defendants' Goods using the Infringing Mark ("Defendants' Infringing Activities" or the "Infringing Activities").

29. BBS and Defendants are both members of the Specialty Equipment Market Association ("SEMA"). According to the SEMA website: "This trade association consists of a diverse group of manufacturers, distributors, retailers, publishing companies, auto restorers, street rod builders, restylers, car clubs, race teams and more. . . . SEMA members make, buy, sell and use all kinds of specialty parts and accessories to make vehicles more attractive, more unique, more convenient, faster, safer, more fun and even like-new again." See https://www.sema.org/about-sema?

30. Every year, as part of the Automotive Aftermarket Industry Week ("AAIW") held in conjunction with the Automotive Aftermarket Products Expo ("APEX"), SEMA holds a trade show in Las Vegas, Nevada in approximately the beginning of November.

31. AAIW is one of the largest trade shows in the country, taking up essentially all of the convention center space in Las Vegas, including both the Sands Expo Center and the Las Vegas Convention Center.

32. The yearly SEMA show is widely considered the most important industry event of the year.

33. Exhibitors at the SEMA show are, in large part, manufacturers or importers of automotive products, who exhibit their goods to the non-exhibiting attendees, comprised primarily of retailers and other auto parts consumers, in the hopes of eliciting sales for the displayed goods.

34. At the 2015 SEMA Las Vegas show, held November 1st – November 4th, both BBS and Defendants were exhibitors.

35. Defendants had a large booth at which it prominently displayed Defendants' Goods and which the Infringing Mark was prominently displayed, both on Defendants' Goods and on signage and other promotions.

36. BBS first learned of Defendants and of Defendants' Infringing Activities by virtue of Defendants' presence at the 2015 SEMA show.

37. BBS received reports of Defendants' presence and use of the Infringing Mark at SEMA, and additionally received reports and otherwise learned of instances of actual confusion between BBS and Defendants resulting from Defendants' use of the Infringing Mark.

38. Using methods established by SEMA for dealing with instances of intellectual property infringement and using additional communications from counsel, BBS requested that Defendants cease their Infringing Activities at SEMA and generally.

39. In response to BBS's request, Defendants removed certain signage from their SEMA booth, but Defendants refused to cease all use of the Infringing Mark. More specifically, Defendants' refused to remove the Infringing Mark from the goods displayed at the SEMA show, namely Defendants refused to remove wheel center caps bearing the Infringing Mark, notwithstanding the fact that such center caps are easily removed from the wheels themselves.

40.     Defendants' stated reason for refusing to remove the Infringing Mark from the goods displayed at the SEMA show was that such removal would render the wheels "difficult to sell." Thus, Defendants continued their use of the Infringing Mark specifically for the purpose of soliciting sales of their goods.

41.     Defendants continued to use the Infringing Mark for the duration of the SEMA show in connection with their advertisement, promotion, offer for sale, and sale of Defendants' Goods.

42.     After the conclusion of the SEMA show, and notwithstanding Defendants' actual knowledge of BBS, BBS's Marks, and BBS's allegations of infringement, Defendants continue to offer for sale, advertise, promote, sell and ship Defendants' Goods using the Infringing Mark.

43.     Defendants are continuing their Infringing Activities.

44.     Upon information and belief, Defendants were aware of BBS and BBS's Marks prior to commencing their Infringing Activities.

45.     Upon information and belief, Defendants knowingly and intentionally committed their Infringing Activities.

46.     BBS and Defendants are engaged in the business of providing the same products, to the same class of customers, through the same channels of trade.

47.     The aforementioned acts of Defendants have caused and will continue to cause actual confusion and a likelihood of confusion in the minds of the trade and the public, and will damage BBS's reputation in connection with BBS's Marks.

48.     The aforementioned acts of Defendants constitute trademark infringement.

49.     The aforementioned acts of Defendants constitute counterfeiting.

50.     The aforementioned acts of Defendants constitute false designation of origin.

51. The aforementioned acts of Defendants constitute unfair competition.

## COUNT I
## TRADEMARK INFRINGEMENT AND COUNTERFITTING (LANHAM ACT § 32)

52. BBS repeats and realleges each and every allegation contained in the prior paragraphs hereto, and the same are incorporated herein and made a part hereof.

53. BBS's Marks are registered on the principal register in the United States Patent and Trademark Office.

54. Since the registration of BBS's Marks, BBS has continuously used, and is currently using, BBS's Marks in United States commerce on, and/or in connection with, the offering for sale and sale of BBS's Goods.

55. Defendants' have committed and continue to commit Defendants' Infringing Activities and Defendants' use of the Infringing Mark on and/or in connection with the advertising, offering for sale and sale of Defendants Goods in United States commerce.

56. Defendants' Goods are not authentic BBS Goods, do not bear any of BBS's Marks and are identical and/or substantially similar to BBS's Goods.

57. Defendants use of BBS's Marks, and/or the mark "BBS," on Defendants' Goods constitutes use as a spurious mark.

58. Defendants' Infringing Mark is identical with, or substantially indistinguishable from, BBS's Marks.

59. Upon information and belief, Defendants' conduct is willful, malicious and wanton and Defendants will continue their acts of counterfeiting unless enjoined by this Court.

60. As a result of Defendants' conduct, there is a strong likelihood of mistake or deception, and many persons familiar with BBS, BBS's Marks, reputation and favorable

goodwill, are likely to buy from Defendants in belief that Defendants' Goods purchased from Defendants are authentic BBS Goods.

61. Upon information and belief, as a result of Defendants' conduct, actual confusion and passing off has occurred.

62. By virtue of Defendants' conduct, Defendants are engaged in the counterfeiting of goods by offering for sale and selling Defendants' Goods on, in connection with and/or bearing Defendants' Infringing Mark, and/or a spurious mark that is identical with or substantially indistinguishable from BBS's Marks, in violation of the Lanham Act § 32, 15 U.S.C § 1114(1).

63. Defendants have and intend to make unlawful gains and profits from such unlawful infringement and, by reason thereof, BBS has and will be deprived of rights and profits which otherwise would have come to BBS, but for such infringements.

64. BBS has no adequate remedy at law for the injury alleged in this count, and said injury is, in part, intangible in nature and not capable of being fully measured or valued entirely in terms of monetary damages.

65. Notwithstanding the inadequacy of and the difficulty of presently fully ascertaining BBS's monetary damages caused by Defendants' wrongful conduct, BBS is informed and believes and, based upon such information and belief, alleges that said conduct has resulted in irreparable, direct and proximate damages to BBS. BBS seeks leave of this Court to amend its complaint to allege the full nature and extent of said monetary damages if, when and to the extent the damages are ascertained.

## COUNT II
## REGISTERED TRADEMARK INFRINGEMENT (LANHAM ACT § 32)

66. BBS repeats and realleges each and every allegation contained in the prior paragraphs hereto, and the same are incorporated herein and made a part hereof.

67. By virtue of Defendants' Infringing Activities and Defendants' use of the Infringing Mark in connection with the advertising and offering for sale of Defendants' Goods, which goods are not authentic BBS Goods, Defendants have used and continue to use spurious marks in commerce.

68. Upon information and belief, Defendants' conduct is willful, malicious and wanton and Defendants will continue their acts of willful infringement unless enjoined by this Court.

69. As a result of Defendants' conduct, there is a strong likelihood of confusion, mistake, or deception, and many persons familiar with BBS, BBS's Marks, reputation and favorable goodwill, are likely to buy from Defendants in belief that Defendants' Goods purchased from Defendants are authentic BBS Goods.

70. Upon information and belief, as a result of Defendants' conduct, actual confusion has occurred.

71. By virtue of Defendants' conduct, Defendants are engaged in infringement of BBS's Marks, in violation of the Lanham Act § 32, 15 U.S.C § 1114(1), by using marks wherein such use is likely to cause confusion, or to cause mistake or to deceive.

72. Defendants have and intend to make unlawful gains and profits from such unlawful infringement and, by reason thereof, BBS has and will be deprived of rights and profits which otherwise would have come to BBS, but for such infringements.

Case 1:15-cv-09205-AKH   Document 1   Filed 11/23/15   Page 11 of 19

73. BBS has no adequate remedy at law for the injury alleged in this count, and said injury is, in part, intangible in nature and not capable of being fully measured or valued entirely in terms of monetary damages.

74. Notwithstanding the inadequacy of and the difficulty of presently fully ascertaining BBS's monetary damages caused by Defendants' wrongful conduct, BBS is informed and believes and, based upon such information and belief, alleges that said conduct has resulted in irreparable, direct and proximate damages to BBS. BBS seeks leave of this Court to amend its complaint to allege the full nature and extent of said monetary damages if, when and to the extent the damages are ascertained.

## COUNT III
## TRADEMARK INFRINGEMENT, FALSE DESIGNATION OF ORIGIN, FALSE DESCRIPTION, AND UNFAIR COMPETITION LANHAM ACT § 43(a)

75. BBS repeats and realleges each and every allegation contained in the prior paragraphs hereto, and the same are incorporated herein and made a part hereof.

76. Defendants Infringing Activities and Defendants' conduct are willful, unfair, untrue and deceptive, in that they intend to mislead, deceive and confuse, and have had and continue to have the result of misleading, deceiving and confusing the public to believe that Defendants and/or Defendants' Goods are affiliated with, sponsored or controlled by BBS. As a consequence, Defendants have traded upon and gained public acceptance and other benefits from BBS's Marks and BBS's favorable reputation, which has accordingly, been placed at risk by Defendants' illegal acts and conduct.

77. The acts of Defendants' constitute infringement of BBS's Marks, and the use of false designations of origin, false representations, and unfair competition, by inducing the

erroneous belief that Defendants and/or Defendants' Goods are in some manner affiliated with, originate from, or are sponsored by BBS, and by misrepresenting the nature and/or origin of Defendants' Goods, all in violation of Lanham Act § 43(a), 15 U.S.C. § 1125(a).

78.     Upon information and belief, Defendants' infringing acts were taken willfully and intentionally, with Defendants' prior knowledge of BBS and BBS's Marks, and with the specific intent to cause confusion among consumers and to otherwise take advantage of BBS's reputation and good will.

79.     The acts of Defendants have caused irreparable harm and damage to BBS and will continue to cause irreparable harm to BBS, and have caused and will continue to cause BBS to suffer monetary damage in an amount thus far not determined.

80.     BBS has no adequate remedy at law for the injury alleged in this count, and said injury is, in part, intangible in nature and not capable of being fully measured or valued entirely in terms of monetary damages.

81.     Notwithstanding the inadequacy of and the difficulty of presently fully ascertaining BBS's monetary damages caused by Defendants' wrongful conduct, BBS is informed and believes and, based upon such information and belief, alleges that said conduct has resulted in irreparable, direct and proximate damages to BBS.  BBS seeks leave of this Court to amend its complaint to allege the full nature and extent of said monetary damages if, when and to the extent the damages are ascertained.

## COUNT IV
## COMMON LAW INFRINGEMENT AND UNFAIR COMPETITION

82.     BBS repeats and realleges each allegation contained in the prior paragraphs hereto and the same are incorporated herein and made a part hereof.

83.     Upon information and belief, the acts of Defendants were committed willfully, intentionally, and with bad faith.

84.     Upon information and belief, with Defendants' prior knowledge of BBS and BBS's Marks, Defendants intentionally appropriated BBS's Marks with the intent of causing confusion, mistake and deception as to the source of Defendants' Goods sold using the Infringing Mark, with the intent to palm-off Defendants' Goods as those of BBS and to misappropriate the efforts and good will of BBS.

85.     The acts of Defendants have created a likelihood of confusion.

86.     The acts of Defendants, including Defendants' use of the Infringing Mark, constitutes trademark infringement, in violation of the common law of the State of New York.

87.     The acts of Defendants, including Defendants' use of the Infringing Mark, constitute unfair competition, in violation of the common law of the State of New York.

88.     The foregoing acts of Defendants have injured and will continue to injure BBS, by depriving it of sales of its genuine goods and services, by injuring its business reputation, and by passing off Defendants' Goods as those of BBS, all in violation of the common law of the State of New York.

89.     Defendants' acts have caused irreparable harm and damage to BBS and have caused BBS monetary damage in an amount BBS thus far has not determined, for which BBS is entitled to its actual damages, Defendants' profits, punitive damages, attorneys' fees and costs.

90. BBS has no adequate remedy at law.

**Count V**
**LIKELIHOOD OF INJURY TO BUSINESS REPUTATION OR DILUTION**
**(NY Gen. Bus. Law § 360-l)**

91. BBS repeats and realleges each allegation contained in the prior paragraphs hereto and the same are incorporated herein and made a part hereof.

92. The forgoing acts of Defendants have created and will create a likelihood of injury to the public image and business reputation of BBS.

93. The forgoing acts of Defendants have created and will create a likelihood of dilution of BBS's Marks.

94. BBS's Marks are extremely strong, inherently strong and distinctive, and have acquired distinctiveness and a secondary meaning.

95. Defendants appropriated BBS's Marks by using the Infringing Mark, which is identical and/or confusingly similar to BBS's Marks.

96. The forgoing acts of Defendants will create a likelihood of dilution by blurring, in that Defendants' use of the Infringing Mark will cause BBS's Marks to lose its ability to serve as a unique identifier of BBS's Goods.

97. Based on the foregoing, Defendants have violated New York Gen. Bus. Law § 360-l, for which BBS is entitled to injunctive relief.

## COUNT VI
## TRADEMARK INFRINGEMENT AND DILUTION
## AND DECEPTIVE ACTS AND PRACTICES
## (NY Gen. Bus. Law § 349)

98. BBS repeats and realleges each allegation contained in the prior paragraphs hereto and the same are incorporated herein and made a part hereof.

99. The foregoing acts of Defendants constitute willful, deceptive acts and practices in the conduct of business, trade and/or commerce, in violation of New York Gen. Bus. Law § 349, for which BBS is entitled to injunctive relief, actual damages, treble damages, punitive damages, attorneys' fees, and costs.

100. The forgoing acts of Defendants will create a likelihood of injury to the public image and business reputation of BBS, in that regard, the public will likely associate Defendants' Infringing Mark with BBS's Marks, and cause the dilution of the distinctive quality of BBS's Marks, in violation of New York Gen. Bus. Law § 349, for which BBS is entitled to injunctive relief.

101. The foregoing acts of Defendants, including the use of Defendants' Infringing Mark in the conduct of business, were calculated and designed intentionally to mislead and deceive the public and trade as to the identity of Defendants or as to the connection of Defendants with BBS, in violation of New York Gen. Bus. Law. § 349, for which BBS is entitled to injunctive relief.

## COUNT VII
## USE OF NAME WITH INTENT TO DECEIVE
## (NY Gen. Bus. Law § 133)

102. BBS repeats and realleges each allegation contained in the prior paragraphs hereto and the same are incorporated herein and made a part hereof.

103. Defendants used the Infringing Mark in commerce.

104. Upon information and belief, Defendants were aware of BBS and of BBS's use of BBS's Marks prior to the time Defendants selected and commenced using Defendants' Infringing Mark.

105. Upon information and belief, based upon, without limitation, the similarity of the parties' respective marks, the proximity of the parties' respective channels for offering for sale and selling the parties' respective goods, the parties' respective relevant purchasers, and Defendants' prior knowledge of BBS and BBS's use of BBS's Marks, Defendants adopted, used and continue to use the Infringing Mark with the intent of causing confusion among consumers with the purpose of benefitting from BBS's reputation and goodwill.

106. Upon information and belief, Defendants used the Infringing Mark in bad faith.

107. Upon information and belief, Defendants used the Infringing Mark with the intent to cause confusion and to deceive the public.

108. Defendants' use of the Infringing Mark has created the likelihood of confusion and actual confusion.

109. The foregoing acts of Defendants, constitute a violation of New York Gen. Bus. Law. § 133, for which BBS is entitled to injunctive relief.

**WHEREFORE**, BBS demands judgment against Defendants as follows:

A. That Defendants' conduct serves to infringe BBS's Marks and constitute acts of counterfeiting in violation of Lanham Act § 32, 15 U.S.C. § 1114;

A. That Defendants' conduct serves to infringe BBS's Marks in violation of Lanham Act § 32, 15 U.S.C. § 1114;

B. That Defendants' conduct serves to infringe BBS's Marks, falsely designate the origin of Defendants' Goods, falsely describe such goods, and unfairly compete with BBS, all in violation of Lanham Act § 43(a), 15 U.S.C. § 1125;

C. That Defendants' conduct constitutes trademark infringement and unfair competition under the common law of the State of New York;

D. That Defendants' conduct violates the provisions of New York Gen. Bus. Law § 360-l and constitutes trademark infringement and dilution and injury to BBS's business reputation;

E. That Defendants' conduct violates the provisions of New York Gen. Bus. Law § 349 and constitutes trademark dilution of BBS's Marks and deceptive acts and practices;

F. That Defendants' conduct violates the provisions of New York Gen. Bus. Law § l33 and constitutes use of BBS's name with intent to deceive;

G. That Defendants' and its agents, officers, directors, servants, employees, attorneys, their successors and assigns, and all others in active concert or participation with Defendants' be preliminarily and permanently enjoined from directly or indirectly:

    i. Using BBS's Registered Trademarks, or any other trademark which is similar to or are colorable imitations of BBS's Registered Trademarks;

      ii.      Committing any act which, in and of itself, or from the manner or under the circumstances in which it is done amounts to false designation of origin, false description or false representation of Defendants' goods and services;

      iii.      Otherwise unfairly competing with BBS or committing dilution, infringement and/or injury to/of BBS's rights.

H.      That the Court issue an Order directing Defendants to file with the Court and serve on BBS, within thirty (30) days after the service on Defendants of such injunctions, a report in writing and under oath, setting forth in detail the manner and form in which Defendants have complied with the injunction.

I.      That the Court award judgment in favor of BBS for the damages sustained by BBS and the profits made by Defendants as a result of Defendants' wrongful conduct.

J.      That the Court award judgment in favor of BBS in the amount of statutory damages.

K.      That the Court award judgment in favor of BBS in the amount of treble damages.

L.      That the Court award judgment against Defendants for the full costs of this action, including BBS's reasonable attorneys' fees.

M.      That the Court award to BBS punitive damages sufficient to deter Defendants from committing such willful acts of infringement in the future.

N.      That this Court require a full and complete accounting of all monies received by Defendants as a result of the sales under Defendants' Infringing Mark.

O.      For interest on all amounts found to be due to BBS from Defendants, at the prevailing rate, from the date said amounts or any part thereof became or become due.

P.	That the Court require Defendants to notify Defendants' commercial associates, suppliers and customers of said Order.

Q.	That the Court order such other, further and different relief as the nature of this action may require and that the Court may deem just and proper.

R.	That the Court retain jurisdiction of this action for the purpose of enabling BBS to apply to the Court, at any time, for such further orders and directions as may be necessary or appropriate for the interpretation or execution of any order entered in this action, for the modification of any such order, for the enforcement or compliance therewith and for the punishment of any violations thereof.

## Jury Trial

BBS requests that the matters set forth herein be tried by a jury.

Dated: Scarsdale, New York  
       November 23, 2015

Respectfully submitted,

**LACKENBACH SIEGEL LLP**

By:	*/s/ Robert B. Golden*  
Robert B. Golden (RG 6157)  
Attorneys for BBS Holdings LLC.  
One Chase Road  
Lackenbach Siegel Bldg., Penthouse Fl.  
Scarsdale, New York 10583  
(914) 723-4300  
(914) 725-5674 (fax)